UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GRANT E. PARISH,

                Plaintiff,         Civil Action No. 13-14410
                                        Honorable Paul D. Borman
                                        Magistrate Judge David R. Grand

v.

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____/

**REPORT AND RECOMMENDATION ON MOTION
FOR ATTORNEY FEES PURSUANT TO 42 U.S.C. § 406(b)**

**I.    REPORT**

    **A.  Procedural History**

This civil action, which concerns plaintiff Grant Parish's ("Parish") appeal of the administrative determination denying his Social Security disability insurance benefits, is before the Court for a Report and Recommendation on a fee dispute between Parish's counsel, Meredith Marcus ("Marcus") of the Daley Disability Law firm (the "Firm"), and Defendant Commissioner of Social Security (the "Commissioner"). (Docs. # 28, 29).

Parish filed his complaint on October 21, 2013, and the Commissioner filed an answer and the administrative transcript on February 28, 2014. (Docs. # 1, 12 and 13). On June 16, 2014, Parish filed his motion for summary judgment. (Doc. # 17). The Commissioner applied for and received an extension of time to file her summary judgment motion. The Commissioner never filed a response, however, because, on August 14, 2014, the parties entered into a

1

stipulated order remanding the case to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g). (Doc. # 21). Judgment in Parish's favor was entered the same day. (Doc. # 22).

On November 12, 2014, Parish filed a motion for attorney's fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. (Doc. # 23). On June 2, 2015, the District Court adopted the undersigned's report and recommendation granting attorney's fees in the amount of $3,505.19. (Doc. # 27).

On remand, the Commissioner found Parish disabled and awarded $69,808.00 in past-due benefits. (Doc. # 28 at ¶2). On August 30, 2015, pursuant to 42 U.S.C. § 406(b) and the contingent fee agreement entered into by Parish and Frederick J. Daley, Jr. ("Daley") of the Firm, Marcus filed the instant petition for payment of the contingent-fee equal to 25% of the past-due benefits recovered, or $17,452.00. (*Id.*). Marcus provided evidence that she spent 16.60 hours of attorney time[1] and 3.76 hours of paralegal time were spent representing Parish in this matter. (*Id.* at ¶4 and Ex. D). Marcus submitted the fee agreement, signed by both Parish and Daley, in which Parish specifically acknowledges that an attorney who successfully represents him in court "may be awarded" a reasonable fee not in excess of 25% of his past-due benefits. (Doc. # 28 at Ex. B).

On September 14, 2016, the Commissioner filed a response opposing Marcus' request and suggesting the Court award a reduced, reasonable fee for the hours spent on Parish's case. (Doc. # 30). The Commissioner first contends the signed contingent-fee agreement should be afforded minimal weight given its purportedly adhesive nature, and second, that granting

---

[1] The submitted time log reflects a total of .38 hours for time spent by "local counsel". (Doc. #28-4). But this time does not seem to have added anything of value towards securing the successful result for Parish. The first of two entries, dated March 26, 2014 (about 5 months after the complaint was filed) simply states "Agreed to serve as local counsel, filed appearance in the case", while the second, dated August 14, 2014, states "Review remand order." (*Id.*).

Marcus' request would provide her with an impermissible windfall. (*Id*. at 7-8). While urging a downward adjustment of the requested fee, the Commissioner did not suggest what she believes a reasonable fee would be in this case. Marcus filed a reply brief, as well as a supplemental reply brief in support of her request for the full 25% contingent fee award. (Docs. #32, 33).[2] The Court finds that the facts and legal issues are adequately presented in the parties' filings, and it declines to hold a hearing in this matter.

### B. Analysis

The Social Security Act, 42 U.S.C. § 406(b)(1)(A), permits a claimant's attorney to recover "a reasonable fee" not to exceed "25 percent of the past-due benefits to which the claimant is entitled" following the successful disposition of a Social Security disability appeal. Contingent-fee agreements are permissible under section 406(b), and the Supreme Court has instructed that courts must review these agreements as an "independent check, assuring that they yield reasonable results" in each case. *Gisbrecht v. Barnhart*, 535 U.S. 789, 807 (2002). The Court first examines the agreement itself, then tests the proposed fee for substantive reasonableness based on case-specific factors such as the character of the representation, the results achieved, the attorney's standard noncontingent-fee rate, and the time spent on the case. *Sykes v. Comm'r of Soc. Sec.*, 144 F. Supp. 3d 919, 922 (E.D. Mich. 2015) (citing *Gisbrecht* at 808).

### i. The Contingent Fee Agreement is Not Inherently Unfair or Reasonable

Contingent-fee agreements in Social Security cases are given the weight ordinarily accorded to a rebuttable presumption. *Lasley v. Comm'r of Soc. Sec.*, 771 F.3d 308, 309 (6th Cir.

---

[2] Marcus' supplemental reply was accompanied by a motion seeking permission to file that document. (Doc. #33). **IT IS HEREBY ORDERED** that that motion **(Doc. #33)** is **GRANTED**.

2014) ("our precedent accords a rebuttable presumption of reasonableness to contingency-fee agreements that comply with § 406(b)'s 25–percent cap.") (citing *Hayes v. Sec'y of Health & Human Servs.*, 923 F.2d 418, 421 (6th Cir.1991) and *Rodriquez v. Bowen*, 865 F.2d 739, 746 (6th Cir. 1989)). The Commissioner argues that Daley's fee agreement with Parish is not entitled to such weight because "the specialized Social Security bar charges uniform contingent fees (the statutory maximum of 25%) and presumably presents its agreements on a take-it-or-leave-it basis." (Doc. # 30 at 7-8). This argument lacks merit because the agreement in question merely tracks the statutory language noted above regarding *allowable* fees in Social Security cases; the signed agreement states "[a]n attorney who successfully represents a Social Security benefits claimant *may* be awarded . . . a *reasonable* fee . . . *not in excess of 25 percent* of the past-due benefits." (Doc. # 28 Ex. B) (emphasis added). The Commissioner has shown nothing collusive or unfair about the parties' agreement which merely provides for compliance with the law regarding the recovery of fees.

Also cutting against the Commissioner's first argument is that it relies largely on Justice Scalia's dissent in *Gisbrecht*, 535 U.S. at 812, whereas the Supreme Court majority rejected the notion that contingent-fee agreements are disfavored under section 406(b). *Gisbrecht*, 535 U.S. at 807 n.15. Indeed, the Court held that such agreements were permissible because, under section 406(b), courts still review "such arrangements as an independent check, to assure that they yield reasonable results in particular cases. *Id.* at 807.

> ii. A "Downward Reduction" in the Requested Fees is Required to Ensure Reasonableness under Section 406(b)

The Court thus turns to whether, given the facts of this particular case, Marcus' request for the maximum fee allowable under the parties' contract is compatible with section 406(b)'s reasonableness requirement. In *Gisbrecht*, the Supreme Court instructed:

4

> Courts that approach fee determinations by looking first to the contingent-fee agreement, then testing it for reasonableness, have appropriately reduced the attorney's recovery based on the character of the representation and the results the representative achieved. If the attorney is responsible for delay, for example, a reduction is in order so that the attorney will not profit from the accumulation of benefits during the pendency of the case in court. If the benefits are large in comparison to the amount of time counsel spent on the case, a downward adjustment is similarly in order.

*Gisbrecht*, 535 U.S. at 808 (internal citations omitted).

The Court will address these considerations in reverse order, first examining whether, in light of the relatively few hours Marcus (and her paralegal) spent on the case, her request for $17,452 in fees requires a "downward adjustment" as described in *Gisbrecht*. The core consideration in this analysis is whether the attorney stands to gain a disproportionately large award – a "windfall" – in light of the time and effort expended in the case. *Hayes*, 923 F.2d at 422. In assessing whether an apparently large contingency-fee award amounts to a windfall, it must be recognized that the attorney does not win every contingency fee case he or she takes. *Id.* at 421. Accordingly, even contingent-fees which result in rather large corresponding hourly rates may well be reasonable since "[c]ontingent-fees generally overcompensate in some cases and undercompensate in others." *Id.* (quoting *Royzer v. Sec'y of Health and Human Servs.*, 900 F.2d 981, 982 (6th Cir. 1990)). To this point, while the *Hayes* court did not set any outer limits of "reasonableness," it did instruct that "a windfall can never occur" in contingency-fee cases when the hypothetical hourly rate is "less than twice the standard rate for such work in the relevant market." *Id.* at 422. Awarding fees beyond this "safe harbor" may be reasonable, but such a finding depends on whether the character of the particular representation justifies the larger award. *Id. See also Lasley*, 771 F.3d at 309 (citing with approval trial court's holding that

5

"a hypothetical hourly rate that is more than twice the standard rate will not automatically be held to constitute an unreasonable 'windfall.'").

The Court begins by determining the applicable standard rate for Marcus' work in this market. The Commissioner's discussion of aggregate data compiled by the State Bar of Michigan[3] is helpful here.[4] (*See* Doc. # 30). Marcus had been in practice for approximately four years at the time she worked on Parish's case. (Doc. # 28 at Ex. C). Analyzing the 2014 State Bar economic survey, the hourly rate for an attorney in private practice with three to five years of experience ranged between $160 (twenty-fifth percentile), $205 (mean), and $317 (ninety-fifth percentile). (Survey at 9). As for public benefits attorneys in particular, the hourly rate ranged between $180 (twenty-fifth percentile), $231 (mean), and $395 (ninety-fifth percentile). (*Id.* at 10).

Coincidentally, a different magistrate judge of this Court recently considered this data in assessing Marcus' applicable standard rate in *Acosta v. Comm'r of Soc. Sec.*, No. 14-cv-10212, 2016 WL 8094540 (E.D. Mich. Nov. 17, 2016), report and recommendation adopted, No. 14-10212, 2017 WL 372000 (E.D. Mich. Jan. 26, 2017). The *Acosta* court found $250 to be the appropriate standard rate, which was at the seventy-fifth percentile for attorneys with three to five years of experience, and slightly above the mean for public benefits attorneys irrespective of experience. *Id.* at *7. The Court sees no reason to depart from that finding here which was expressly upheld on appeal. *Acosta*, 2017 WL 372000, at *1.

---

[3] State Bar of Michigan, Economics of Law Practice in Michigan (2014), *available at* http://www.michbar.org/file/pmrc/articles/0000152.pdf.

[4] Other judges in this district have similarly relied on this study in assessing the reasonableness of Social Security contingent-fee awards, and this court likewise takes judicial notice of it. *See Sykes*, 144 F.Supp.3d at 926; *Ballatore v. Comm'r of Soc. Sec.*, 2015 WL 5830836, at *9; *Shong v. Colvin*, 2016 WL 4089142, at *2.

As for the appropriate role of paralegal time in arriving at the hypothetical hourly rate, it follows that non-attorney professionals should be compensated at a rate lower than attorneys. This issue was also addressed in *Acosta*, where the court observed that recent cases in this circuit have granted $50[5] and $75[6] per hour as reasonable hourly fees for legal assistant work. Construing these figures liberally in favor of Marcus, $150 is the maximum recoverable paralegal rate which would ensure no windfall occurs.

Multiplying the 3.76 hours of paralegal time at $150 per hour, and 16.60 hours of attorney time at $500 per hour yields an award of $8,864 under the *Hayes* non-windfall "safe harbor" framework.[7] Marcus seeks an award of more than twice that amount, $17,452.00, which amounts to a rate of about $1,017 per hour for her work.[8] This, coupled with the fact that 16.60 hours of attorney time resulted in an award to Parish of $69,808.00, would seem to implicate *Gisbrecht's* instruction that where "the benefits are large in comparison to the amount of time counsel spent on the case, a downward adjustment is [] in order." *Gisbrecht*, 535 U.S. at 808.

---

[5] *Rego v. Comm'r of Soc. Sec.*, No. 12-CV-00034, 2014 WL 825219, at *4 (N.D. Ohio Mar. 3, 2014).

[6] *Rhoads v. Comm'r of Soc. Sec.*, No. 09-CV-789, 2012 WL 191756, at *2 (W.D. Mich. Jan. 6, 2012), report and recommendation adopted, No. 09-CV-789, 2012 WL 202826 (W.D. Mich. Jan. 23, 2012).

[7] Marcus contends that "[t]he Commissioner erroneously argues *Hayes* [] as support for the argument that a windfall is a mathematical formula." (Doc. #32 at 2). This is a valid criticism because the Commissioner focuses almost entirely on comparing Marcus' standard-rate fee with the amount being sought, and concludes that this establishes a "windfall." (Doc. #30 at 8-10). Even under *Hayes*, however, the $8,864 figure does not constitute the maximum allowable fee, but rather a fee which would ensure that no impermissible windfall occurs. *Lasley*, 771 F.3d at 309.

[8] Marcus contends that she "will refund the EAJA award to [Parish]; thus the actual de facto rate is $672.45 per hour ($17,450.00 – EAJA of $3,505.19/20.74 hours). (Doc. #32). While it is true that this refund would reduce the fee/recovery ratio somewhat, this argument lacks merit as Marcus would still be pocketing a net $17,450 under her proposed approach. Requiring counsel to disgorge the EAJA award simply prevents an impermissible double-dip.

The Court's task thus becomes determining the downward adjustment, if any, required to ensure compliance with section 406(b)(1)(A)'s limitation to "a reasonable fee." In making this determination, it is appropriate to consider various quantitative and qualitative factors, such as the amount of time counsel spent on the matter, the effective hourly rate of counsel's requested fee, counsel's level of experience at the time of representation, the result achieved, the difficulty in achieving that result, and the overall quality of the representation.

In support of her request, Marcus writes, "[t]he undersigned [i.e., Marcus] has collected fees in excess of $1,000 in the following cases . . ." (Doc. # 28 at 5-7) (listing cases). But there are numerous problems with this argument. First, it is unclear how accurate the statement is. In one of the more recent cases Marcus cites, *Wummel v. Comm'r of Soc. Sec.*, No. 12-14860, 2016 WL 245287 (E.D. Mich. Jan. 21, 2016), *she* did not collect any fees. As discussed below, it was not Marcus, but a different member of her firm with decades more experience than she, who was awarded fees in that case. *Wummel*, 2016 WL 245287 at *1.[9] In fact, many of the cases cited by Marcus as ones in which *she* supposedly collected fees in excess of $1,000 per hour were decided years before she became an attorney. (Doc. #28 at 5) (citing *e.g.*, *Meeks v. Barnhart*, No. 2:03-cv-67 (N.D. Ind. Oct. 17, 2006), *Jakel-Taylor v. Barnhart*, No. 05-cv-02 (N.D. Ind. Jan. 22, 2007)). Second, Marcus explain the circumstances which led to the $1,000+/hour fee awards in these cases. And, in a recent Western District of Wisconsin case in which Marcus was seeking a fee award under section 406(b), the court found that her request for fees with an implied hourly rate of $686.60 was "on the higher end of the spectrum," though it did note that courts had approved "even higher amounts." *Best v. Colvin*, No. 13-cv-837, 2016 WL 7442663, at *1 (W.D. Wisc. Dec. 27, 2016).

---

[9] A review of the docket in that case indicates that Marcus did not even represent Wummel.

8

At any rate, simply establishing that various courts have, on occasion, granted section 406(b) requests with hypothetical hourly rates similar to that of the present request is relatively unpersuasive. Far more important to the analysis is *why* these awards were found to be reasonable in those cases, and whether the facts of this case justify a similarly large fee award. The cases which resulted in $1,000/hour rates being awarded seem to include some combination of very experienced counsel, an unusually high recovery of past-due benefits, and a complex and difficult dispute over the claimant's entitlement to benefits. This was similarly addressed in *Acosta*; indeed, the magistrate judge there pointed to a case litigated by different lawyers in Marcus' firm in which the court held a fee request with an effective hourly rate of $1,102.79 was reasonable given counsel's 40 years of experience with Social Security matters and a large recovery ($168,948.00) of past-due benefits. *Acosta*, 2016 WL 8094540 at *9 (describing *Szanyi v. Astrue*, No. 04-CV-412 (N.D. Ind. Nov. 14, 2007)). Similarly, in *Wummel*, 2016 WL 245287, the Honorable Terrence Berg found a fee award of $29,108.75 for 30.3 hours of attorney work – or $960.68 per hour – was reasonable. But that case was also litigated by senior attorneys at Marcus' firm who had decades of experience. Additionally, the claimant in that case had unsuccessfully fought for nearly a decade's worth of past-due benefits, and his appeal presented complex *res judicata* issues in addition to the more typical fact-based arguments common in Social Security appeals. Judge Berg concluded that while the requested fee was high, it was reasonable given counsel's decades of experience, usually large award of past-due benefits, and challenging legal issues presented by the appeal.

The sole remaining question, then, is what fee is appropriate given the character of Marcus' representation in this case. As noted above, *supra* at 7 n.7, the Commissioner failed to meaningfully analyze any of the qualitative factors to be considered here, but most of the

9

considerations are not reasonably in dispute.  Clearly, Marcus' efforts resulted in a favorable and meaningful judgment for her client.  She also achieved this result through efficient representation – spending less than 17 hours total on this case.  The Court has reviewed Parish's summary judgment motion, and finds it is well-written and concise.  At the same time, the issues in this case were not overly complex; the salient analysis consisted mostly of identifying and explaining a few factual errors in the ALJ's decision, and the discussion of those matters comprised only about 8 pages of Parish's 23-page summary judgment motion.  (Doc. #17 at 13-20).  The Court also considers that unlike the petitioners in the cases discussed above, Marcus had been practicing law for only four years at the relevant time.  That said, her law practice focuses on Social Security work, and before becoming a practicing lawyer she worked at the same law firm as a "law clerk."  (Doc. #33-1).  The Court also notes that Marcus' hourly rate in non-contingent fee matters is $350/hour.  (*Id.*).  One last important consideration is that any reduction in the fee payable to social security attorneys under section 406(b) could have the adverse effect of discouraging the efficient representation of Social Security claimants.

Taking all of the foregoing competing considerations into account, the Court finds that the total reasonable fee to be awarded in this matter is $14,500.00.

## II.    RECOMMENDATION

For the foregoing reasons, **IT IS RECOMMENDED** that Marcus' petition for attorney fees under 42 U.S.C. § 406(b) be **GRANTED IN PART** and that total fees be awarded in the amount of **$14,500.00**.  The Commissioner should be ordered to promptly pay that amount directly to Frederick J. Daley, Jr. of Daley Disability Law, and Daley should be ordered to refund the EAJA fee of $3,505.19 to Parish.

Dated: March 13, 2017  s/David R. Grand
Ann Arbor, Michigan  DAVID R. GRAND
United States Magistrate Judge

**NOTICE**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 13, 2017.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager